UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| CHET DUDA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>BRIAN WILLIAMS, et al.,<br><br>　　　　　　　　　Defendant. | Case No. 2:16-cv-3044-KJD-CWH<br><br>**<u>ORDER</u>** |

Before the Court is Defendants' Motion for Summary Judgment (#37) to which Plaintiff Chet Duda responded (#40), and Defendants replied (#41). Mr. Duda has also filed a sur-reply (#41), which the Defendants now move to strike (#44).

In this § 1983 action, Mr. Duda claims various prison officials were deliberately indifferent to the conditions of his confinement while he was lawfully incarcerated at High Desert State Prison in Nevada. In late July 2016, a defect in the H.V.A.C. unit of Duda's cell spiked the temperature in the cell and restricted air flow. High Desert repaired the unit in five days during which time Duda and his cellmate endured increased temperatures and stale air. Mr. Duda pursued administrative relief through High Desert's internal grievance program filing an emergency grievance an informal grievance and subsequent appeals. When High Desert denied those grievances and their related appeals, Mr. Duda brought this action. He claimed the high temperatures in his cell caused him neurological damage that High Desert has refused to treat. Duda seeks an injunction requiring High Desert to pay for off-site neurological evaluation, neurological treatment, and monetary damages.

The Eight Amendment protects inmates from suffering cruel and unusual punishments at the hands of state actors. The amendment prohibits inhumane prison conditions, but it does not mandate comfortable prison conditions. When the alleged Eighth Amendment deprivation arises

out of the conditions of an inmate's confinement, the inmate must demonstrate both (1) that the conditions of his confinement posed an objectively substantial risk of serious harm and (2) that prison officials subjectively understood that risk and were deliberately indifferent to the inmate's health or safety. Here, Duda has not presented evidence that the increased temperature of his cell posed an objective risk of serious harm. And even if he could show a substantial risk of harm, Mr. Duda's own admissions demonstrate that multiple prison officials made reasonable efforts to fix the H.V.A.C. unit in his cell and therefore were not indifferent to his health and safety. Finding no deliberate indifference, the Court grants Defendants' Motion for Summary Judgment (#37).

## I. Background

### A. Factual Background

In July of 2016, Mr. Duda was a lawfully incarcerated inmate at the High Desert State Penitentiary in Indian Springs, Nevada. On July 28, 2016, Duda was transferred to cell 2D-14, which he shared with one cellmate. (#6, at 4). Not long after Duda's arrival at 2D-14, Duda observed that the vent door on the H.V.A.C. system was sealed shut. Id. at 3. The defective vent door prevented cool air from circulating through the cell. Id. This caused the cell temperature to increase and caused Duda's cellmate to "[act] a little weird." Id. Duda attributed his cellmate's abnormal behavior to the heat and poor ventilation. Id. According to Duda, the increased temperature in cell 2D-14 was "very uncomfortable" and "dangerously unbearable." Id. at 4.

Duda complained of the heat and poor ventilation in his cell to at least four prison officials: Senior Officer Flores-Nava, Senior Officer Brettenbach, Sergeant Rivera, and Corrections Officer Choyce. Id. Upon receipt of Duda's complaints, both Flores-Nava and Brettenbach immediately contacted the maintenance department and submitted work orders to fix the defective vent door. Id. Neither officer entered Duda's cell to examine the H.V.A.C. system. Id. at 5. Duda also alerted Officer Choyce to the problem who told him "there [was] nothing [Choyce] could do" and that Duda "would have to live with the situation." Id. Maintenance answered the work order on August 2, 2016. (#37, Exh. A at 1). They discovered that the poor air flow and high temperatures were indeed caused by a defective "exhaust damper"

and clogged filter; the maintenance staff repaired both. Id.

Five days elapsed between Duda's first complaint and maintenance repairing the H.V.A.C. system in cell 2D-14. In the interim, Duda filed an emergency grievance with prison staff to fix the cell's H.V.A.C. unit. Id., Exh. 1. Officials determined that Duda's complaints did not constitute an emergency under their relief guidelines and denied the emergency grievance. (#37, Exh. B). Sergeant Rivera notified Duda that the broken H.V.A.C. unit was not an emergency and instructed him to file an informal grievance. (#6, at 4–5). In addition, Sergeant Rivera "put in a request to maintenance" to fix the problem. Id. at 5. Duda filed an informal grievance on August 2, 2016. (#6, Exh. 4). Before that grievance was resolved, he was transferred out of cell 2D-14. (#40, at 2). According to prison officials, Duda's transfer out of cell 2D-14 mooted his grievance, which they denied. (#37, Exh. B, at 4). Duda appealed that denial twice. (#40, Exh. A, at 5–8). In Duda's appeals, his claims shift from a request to repair his H.V.A.C. unit to complaints about alleged injuries he suffered during the five-day period that his cell air conditioning was broken. Id. High Desert ultimately denied Duda's appeals finding that it had offered solutions to Duda's health issues that Duda refused. Id. at 7.

### B. Procedural Background

After Duda exhausted his administrative appeals, he filed this case. Initially, Duda brought three claims against five separate defendants all of whom were affiliated with High Desert State Prison. Those defendants were Warden Brian Williams, Senior Corrections Officer Flores-Nava, Senior Corrections Officer Brettenbach, Corrections Officer Choyce, and Sergeant Rivera. (#6). Duda brought two claims for violations of his Eighth Amendment right to be free from cruel and unusual punishment and a Fifth Amendment due process claim. Id.

As is required by statute, the Court screened Duda's complaint. The Court's screening order dismissed Duda's due process claim as futile. It also dismissed Warden Williams without prejudice. (#5). The Court has since dismissed Senior Corrections Officer Brettenbach under FRCP 4(m). (#50). Left are Duda's Eighth Amendment claims against three remaining defendants: Senior Officer Flores-Nava, Corrections Officer Choyce, and Sergeant Rivera. Those defendants now move for Summary Judgment on each of Duda's claims.

## II. Legal Standard

### A. Title 42 U.S.C. § 1983

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." Conn v. Gabbert, 526 U.S. 286, 290 (1999). Section 1983 does not provide its own substantive rights to plaintiffs. Albright v. Oliver, 510 U.S. 266, 271 (1994). Rather, it provides procedural protections for rights granted elsewhere. Id. Section 1983 claims are two-fold. The plaintiff must show both (1) that a person acting under the color of state law engaged in conduct that (2) deprived the plaintiff of a right, privilege or immunity guaranteed by the Constitution or federal statute. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overturned on other grounds by Daniels v. Williams, 474 U.S. 327 (1986).

### B. Summary Judgment

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). An absence of material fact entitles the moving party for judgment as a matter of law. Id. The moving party bears the initial burden to demonstrate the absence of material fact. Celotex, 477 U.S. at 323. If the moving party makes such a showing, the burden shifts to the non-moving party to present specific facts that demonstrate a genuine factual dispute for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Fed R. Civ. P. 56(e). The Court makes all justifiable inferences in favor of the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). Yet, a party's uncorroborated or self-serving testimony—without more—is insufficient to create a genuine factual dispute. Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1061 (9th Cir. 2002).

## III. Analysis

Duda claims that enduring high temperatures and stagnant air in his cell for five days amounts to cruel and unusual punishment under the Eighth Amendment. Alternatively, he argues that prison officials were deliberately indifferent to his risk of serious harm by failing to immediately repair his H.V.A.C. unit or provide other relief from the heat and poor ventilation.

Their indifference, he contends, caused lasting neurological damage that High Desert refuses to recognize and treat.

The Eighth Amendment "embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency. Estelle v. Gamble, 429 U.S. 97, 102 (1976). In the prisoner context, the Eighth Amendment (1) protects inmates from suffering cruel and unusual punishment through excessive force, and (2) it ensures humane conditions of confinement. See Farmer v. Brennan, 511 U.S. 825, 833–34 (1994). The Constitution does not mandate comfortable prisons. Rhodes v. Chapman, 452 U.S. 337, 349 (1981). It does, however, protect prisoners from inhumane conditions of confinement. Farmer, 511 U.S. at 832. The Court considers multiple factors to determine whether conditions of confinement are inhumane, as opposed to merely uncomfortable, including whether the inmate has adequate food, shelter, clothing, and medical care. Id.

In cases arising out of the conditions of an inmate's confinement, the Eighth Amendment examines the interplay between the objective risk of harm posed by the inmate's conditions of confinement and the prison officials' subjective awareness of that risk. First, the inmate must demonstrate that his confinement caused an objective risk of harm so serious that the inmate was subject to cruel and unusual punishment. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076, 1083 (9th Cir. 2014). Importantly, "routine discomfort inherent in the prison setting" does not rise to the level of cruel and unusual punishment under the Eight Amendment. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000). Rather, the inmate must demonstrate that the deprivation denied the "minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347.

If the inmate demonstrates an objectively substantial risk of harm, he then must demonstrate that prison officials were subjectively aware of that risk of harm and were deliberately indifferent. Snow, 681 F.3d at 985. The official must both be aware of facts from which he could infer a serious risk of harm to the inmate, and the official must actually draw that inference. Farmer, 511 U.S. at 837. Once the official is subjectively aware of the inmate's risk of serious harm, he is deliberately indifferent if he disregards that risk. Id. In essence, prison

officials must have known of the plaintiff's risk of suffering serious harm and disregarded that risk.

While the Eighth Amendment ensures adequate heating, it does not necessarily guarantee "comfortable temperature." Graves v. Arpaio, 623 F.3d 1043, 1049 (9th Cir. 2010) (quoting Keenan v. Hall, 83 F..3d 1083, 1091 (9th Cir. 1996)). One indicator of whether the temperature is dangerous, as opposed to merely uncomfortable, is that the temperature poses "a substantial risk of serious harm" to the inmate. Graves, 623 F.3d at 1049. Multiple conditions of the inmate's confinement may combine to demonstrate an Eighth Amendment violation. Wilson v. Seiter, 501 U.S. 294, 304 (1991). For example, frigid cell temperatures combined with officials' refusal to issue blankets to inmates may rise to the level of substantial risk of serious harm. Id.

### A. The increased temperature and poor air flow in Duda's cell for five days do not rise to the level or cruel and unusual punishment and the defective H.V.A.C. unit did not pose an objective risk of serious harm

Duda has not provided evidence that the increased temperature and lack of ventilation in his cell from July 28, 2016 to August 2, 2016 presented a serious risk of substantial harm nor is such harm obvious here. Duda claims that either problem—the heat or poor ventilation—is enough to show an Eighth Amendment violation. Turning first to the increased temperature in cell 2D-14, Duda claims that the broken vent door prevented cool air from entering the cell and caused the temperature to reach 115 degrees. (#40, at 4–5). Work orders show that Duda was correct that a defect in the H.V.A.C. vent caused the door to seal, which prevented cool air from entering the cell.(#37, Exh. A). However, there is no evidence of the cell's actual temperature during that time. Likewise, Duda presents no evidence of the specific risks of harm associated with residing in a cell at that temperature. Therefore, Duda has not shown that the conditions of his confinement posed an objective risk of serious harm.

The objective prong of the Eighth Amendment requires Duda to demonstrate that the conditions of his confinement presented an objective risk of serious harm. Rather than present specific evidence of his risk of harm, Duda cites to Gates v. Cook for the proposition that excessive heat is "a violation of the Eighth Amendment." 376 F.3d 323 (5th Cir. 2004). There, the Fifth Circuit examined a claim of excessive heat by death row inmates in Mississippi. During

the summer months in Mississippi, the temperature averaged ninety degrees with high humidity. Id. at 334. At the time, Death Row was not airconditioned. Id. The inmates claimed that the high temperatures combined with the permanent lack of air-conditioning posed a serious risk of harm. Id. In support, the inmates presented expert testimony that based on their particular circumstances, the high heat index made it "likely that . . . that an inmate will die of heat stroke or some other heat-related illness." Id. (internal quotations omitted). As a result, the Court upheld an injunction requiring prison officials to provide fans, extra showers, and ice water on days where the heat index reached ninety. Id.

Admittedly, Gates and Duda present a similar argument; namely, high temperatures in a cellblock create inhumane conditions of confinement in violation of the Eighth Amendment. Under the surface, however, these cases are different. First, the Gates Court could objectively verify the temperature of a non-airconditioned cellblock based on the heat index. Duda, on the other hand, presents no evidence of the actual temperature of his cell. At times, he claims that the temperature reached 100 degrees (#6, at 3). At other times he claims the temperature exceeded 115 degrees (#40, at 4). Besides Duda's estimates, there is no evidence of the cell's temperature. Despite cell 2D-14's defective venting, Duda resided in an otherwise air-conditioned facility. Unlike the Gates plaintiffs who resided in a non-air-conditioned cell block, Duda benefited from the cooler air surrounding his cell and had a reprieve from the heat each time he left his cell. Not to mention, Duda only endured the heat for the short time it took maintenance to repair the H.V.A.C. door.[1] Additionally, Duda presents no evidence that the heat in his cell posed a risk of heat stroke or heat related illness. In Gates, the inmates presented expert testimony that their particular circumstances posed serious risks to their health including death. Duda presents only his testimony that he risked harm, which is insufficient to create an issue of fact.

At bottom, unlike Gates, where inmates presented evidence of (1) the actual temperature in the unit and (2) that the temperature presented a serious risk of heat stroke or other illness, Duda has not presented any evidence of the temperature of his cell or the specific risk of harm

---

[1] The Court notes that even it would be hard-pressed to have a defective H.V.A.C. unit repaired in less than five days in its own courtroom in the middle of the summer.

that it posed to him. Accordingly, Duda has failed to show that the temperature in his cell caused a serious risk of substantial harm.

Similarly, Duda fails to demonstrate that the poor ventilation in his cell amounts to an Eighth Amendment violation. Poor ventilation in a prison cell rises to the level of cruel and unusual punishment when it "undermines the health of inmates and the sanitation of the penitentiary." Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996) (citing Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985) (internal quotations omitted). Threats to the health of inmates and sanitation of the facility include "fumes of feces (thrown by some inmates), the smell of urine and vomit as well as other stale bodily odors." Id. Duda's ventilation claim, however, does not make any such argument. Rather, his claim relates merely to the H.V.A.C. unit's inability to circulate cool air through the cell. (#40, at 8). Accordingly, the poor ventilation in Duda's cell during that five-day period did not subject him to a serious risk of substantial harm.

### B. Prison officials were not indifferent to the conditions of Duda's confinement; on the contrary, multiple officers worked to fix the defective H.V.A.C. unit

Even if Duda could demonstrate that the increased heat in his cell posed an objective risk to his health and safety, he has failed to demonstrate that prison officials knew of that risk and were deliberately indifferent to his wellbeing. In fact, Duda's own opposition shows the opposite; both Flores-Nava and Rivera acted immediately to get the cell's H.V.A.C. unit repaired. Deliberate indifference requires both subjective knowledge of a risk of serious harm and failure to mitigate that risk. The Court must first inquire into the official's state of mind at the time of the alleged deprivation to determine whether the official was aware that the conditions of the inmate's confinement posed a risk of serious harm. Wilson v. Seiter, 501 U.S. 294, 299 (1991). The official must "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Once the official draws that inference, a voluntary act or omission with indifference to that risk satisfies the subjective element. Id. at 840.

Here, Duda has not shown that any officer was subjectively aware that he was at risk of serious harm. Duda admits that officers did not enter his cell, nor did they measure the cell's temperature. (#40, at 9–10). Without entering the cell or measuring its temperature, there is no

that it posed to him. Accordingly, Duda has failed to show that the temperature in his cell caused a serious risk of substantial harm.

Similarly, Duda fails to demonstrate that the poor ventilation in his cell amounts to an Eighth Amendment violation. Poor ventilation in a prison cell rises to the level of cruel and unusual punishment when it "undermines the health of inmates and the sanitation of the penitentiary." Keenan v. Hall, 83 F.3d 1083, 1090 (9th Cir. 1996) (citing Hoptowit v. Spellman, 753 F.2d 779, 784 (9th Cir. 1985) (internal quotations omitted). Threats to the health of inmates and sanitation of the facility include "fumes of feces (thrown by some inmates), the smell of urine and vomit as well as other stale bodily odors." Id. Duda's ventilation claim, however, does not make any such argument. Rather, his claim relates merely to the H.V.A.C. unit's inability to circulate cool air through the cell. (#40, at 8). Accordingly, the poor ventilation in Duda's cell during that five-day period did not subject him to a serious risk of substantial harm.

### B. Prison officials were not indifferent to the conditions of Duda's confinement; on the contrary, multiple officers worked to fix the defective H.V.A.C. unit

Even if Duda could demonstrate that the increased heat in his cell posed an objective risk to his health and safety, he has failed to demonstrate that prison officials knew of that risk and were deliberately indifferent to his wellbeing. In fact, Duda's own opposition shows the opposite; both Flores-Nava and Rivera acted immediately to get the cell's H.V.A.C. unit repaired. Deliberate indifference requires both subjective knowledge of a risk of serious harm and failure to mitigate that risk. The Court must first inquire into the official's state of mind at the time of the alleged deprivation to determine whether the official was aware that the conditions of the inmate's confinement posed a risk of serious harm. Wilson v. Seiter, 501 U.S. 294, 299 (1991). The official must "both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837. Once the official draws that inference, a voluntary act or omission with indifference to that risk satisfies the subjective element. Id. at 840.

Here, Duda has not shown that any officer was subjectively aware that he was at risk of serious harm. Duda admits that officers did not enter his cell, nor did they measure the cell's temperature. (#40, at 9–10). Without entering the cell or measuring its temperature, there is no

evidence that any of these defendants drew the inference that the temperature of Duda's cell posed significant danger. Then, after Duda complained of the heat to four different officers, three of them contacted maintenance to schedule work orders. (#6, at 4) ("both senior officers made attempts to reach maintenance and left messages about no ventilation in the cell"); id. at 5 (Sergeant Rivera "also put in a request to maintenance"). Duda also admits that the officers' conduct "may have been unintentional," which undercuts his claim that officers deliberately avoided fixing his cell or that officers were indifferent to his plight. (#6, at 5).

Nevertheless, Duda maintains that the officers' conduct rises to a constitutional violation because they "made [no] attempt to open the cell door to check the adverse conditions" in his cell. (#40, at 4). The Eighth Amendment does not guaranty perfect behavior by prison officials. Rather, the Eighth Amendment requires only that the official takes reasonable measures to abate the inmate's risk of harm. Farmer, 511 U.S. at 847. It would have been commendable for any of these corrections officers to personally inspect Duda's cell or attempt to repair the H.V.A.C. vent door. However, the Constitution does not require them to take such action. It was reasonable for each officer to instead contact maintenance and request a work order under these circumstances. Given that the officers' actions were reasonable, their conduct cannot have risen to deliberate indifference.

There is no doubt that the five days Duda spent in a hot cell were uncomfortable. Uncomfortable conditions of confinement, however, are not unconstitutional conditions of confinement. Finding no Eighth Amendment violation, the Court grants Defendants judgment as a matter of law. As a result, this Court need not determine the issue of qualified immunity or the Defendants' remaining arguments.

**IV.    Conclusion**

Accordingly, it is HEREBY ORDERED that Defendants' Motion for Summary Judgment (#37) is **GRANTED**;

///

///

///

IT IS FURTHER ORDERED that Defendants' Motion to Strike (#44) and Plaintiff's Motion for Status Check on Summary Judgment (#51) are **DENIED AS MOOT**.

Dated this 5th day of March, 2019.

_____
Kent J. Dawson
United States District Judge